UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JAMES S. BARROW                                          PLAINTIFF

LEO DANIEL COOK                            INTERVENING PLAINTIFF

v.                                        CIVIL ACTION NO. 3:14-CV-00219-CRS

CITY OF HILLVIEW, KENTUCKY, *et al*.                    DEFENDANTS

## <u>MEMORANDUM OPINION</u>

This matter is before the court on motion of Defendants, City of Hillview, Kentucky; Glenn Caple, in his individual capacity; and Kenneth Straughn, in his individual capacity (collectively, "Defendants"), for summary judgment. For the reasons stated herein, the court will **GRANT** Defendants' motion. Plaintiff's Amended Complaint and Intervening Plaintiff's Intervening Complaint will be **DIMISSED.**

    **I.    BACKGROUND**

The incidents giving rise to this action began in early January of 2012. Plaintiff James S. Barrow ("Barrow") and Intervening Plaintiff Leo Daniel Cook ("Cook") (collectively, "Plaintiffs"), both employed as police officers for the City of Hillview ("Hillview"), were asked to accompany Defendants Glenn Caple ("Caple") and Kenneth Straughn ("Straughn") to the home of Jim Eadens, the mayor of Hillview. (DN 55, Exh. I, 7.) Mayor Jim Eadens ("Mayor Eadens") had allegedly called Straughn believing there to be K-9 law enforcement dogs in the yard around his home. (*Id*. at Exh. B, 1-2.) At this time, Caple was Hillview's Chief of Police

and Straughn was employed as Major of the Hillview police department. (Def.'s Ans. to Am. Compl., DN 7, ¶¶ 4, 5.)

Plaintiffs Cook and Barrow and Defendants Straughn and Caple responded to Mayor Eadens' call. (DN 55, Exh. B, 1-2.) No law enforcement dogs were found at Mayor Eadens' home, but Straughn and Barrow did discover a backpack on Mayor Eadens' property while walking around the premises. (*Id*. at 2-3.) Cook was asked to examine the backpack and he found that it contained what looked like objects used to manufacture methamphetamine. (*Id*. at Exh. C, 22-23.) Plaintiffs apparently suspected that the backpack belonged to the Mayor's son. (DN 54, Exh. E, 34:8-11.) The backpack was soon thereafter placed on the other side of a fence surrounding Mayor Eadens' property, allegedly at the direction of Caple. (DN 55, Exh. C, 21-23.) This was on the opposite side of the fence that the backpack was originally discovered. (*Id*. at Exh. B, 4.)

Cook believed that Caple ordered the backpack to be moved so as to protect Mayor Eadens from bad publicity. (*Id*. at Exh. C., 26-27.) When Cook informed Barrow that the backpack had been moved from its original location, Barrow suspected that the action was either illegal or against policy. (*Id.* at Exh. D, 38.) Barrow claims that as he was walking towards his car to leave Mayor Eadens' property, Straughn ordered Barrow not to say a word to anyone about what happened. (*Id*. at Exh. D, 38:7-13.)

Barrow reported the incident to the Bullitt County Sheriff Office, which then referred Barrow to the Federal Bureau of Investigation (FBI). (*Id*. at 16-18.) Barrow and Cook cooperated with the FBI in their investigation of what Cook claims the FBI called a case of "political corruption." (*Id*. at Exh. C, 38:16-22.) During the investigation, Caple was permitted to continue acting as Chief of Police but was confined to "performing only administrative

duties." (*Id*. at Exh. G, 72:15-23.)  Both Barrow and Cook claim, however, that despite this "abstention of duties," Caple retained all of his police powers.  (*Id*. at 73-74.)  These powers included the ability to carry a badge and firearm and make arrests.  (*Id*.)

Plaintiffs allege that they were subjected to adverse employment actions by Caple and Straughn when it became known that they participated in the FBI investigation of Caple. Plaintiffs claim that the following disciplinary actions against them evidence a "progression of discipline" and were in retaliation for cooperating with the FBI:

- On May 9, 2013, Barrow received a verbal reprimand for speeding in the parking lot. (*Id*. at Exh. E.)
- On May 31, 2013, Cook received a written reprimand for mishandling a case. (*Id*. at Exh. F.)
- On January 15, 2014, Barrow received a written reprimand for an alleged violation of Hillview's pursuit policy and video recording policy.  This reprimand sought a two-day suspension of Barrow.  (*Id*. at Exh. A.)
- On May 7, 2014, Cook received a verbal reprimand regarding daily log sheets. (*Id*. at Exh. Q.)
- On June 12, 2014, Cook received a memo written by Straughn concerning his excessive absences.  (*Id*. at Exh. M.)
- On July 7, 2014, Cook was served with a notice of intent to interview him regarding complaints for failure to investigate crimes.  (DN 54-5, 52-53.)
- On August 19, 2014, Cook was served with charges for attempting to add $2.50 to the accounts of two Bullitt County Jail inmates for cooperation in an investigation.  These charges sought Cook's termination.  (*Id*. at 54-55.)

Plaintiffs assert that retaliation also occurred in forms other than written discipline. Barrow points to the fact that he was initially denied court pay for his time meeting with the U.S. Attorney concerning the investigation and prosecution of Caple.[1] (DN 55, Exh. I, 52.) Barrow also was required to take his two suspension days, pursuant to his January 15, 2014 disciplinary charges, during the same pay period rather than over multiple pay periods to avoid financial hardship. (*Id*. at 46-49.)

---

[1] The decision denying Plaintiff Barrow's request for court pay was later rescinded and he was ultimately compensated for his time.  (*Id*. at Exh. I, 52.)

Barrow and Cook state that the abovementioned treatment was different from the treatment of other Hillview police officers. For example, in September of 2014, Defendant Straughn failed to turn on his video recording device during a traffic stop in violation of the video recording policy and received no disciplinary charges. (*Id*. at Exh. I, 39-41.) Officers McWhirter, Creason, and Clark were given either no discipline or only reprimands for violations of pursuit and video recording policies. (*Id*. at Exh. I, 42-43; *Id*. at 44-45; *Id*. at Exh. G, 44-45.) Additionally, while Barrow was required to take his two suspension days in the same pay period, other officers were allowed to spread their suspension days over multiple pay periods. (*Id*. at Exh. I, 52-53.)

Plaintiffs claim that this retaliatory treatment was promulgated by both Caple and Straughn directly. Caple and Straughn both signed Barrow's May 9, 2013 reprimand for speeding. (*Id*. at Exh. E.) Caple signed Cook's May 31, 2013 reprimand for mishandling a case. (*Id*. at Exh. F.) While he was under investigation, Caple continued attending meetings in which the disciplinary charges of Barrow and Cook were discussed, despite alleging that he did not participate in these discussions. (*Id*. at Exh. G, 28.)

On February 26, 2014, the Civil Service Board of Hillview upheld Barrow's two day suspension set forth in the Disciplinary Action Form dated January 15, 2014, for violations of Hillview's pursuit and video recording policies. (*Id*. at Exh. A.) Barrow appealed this decision to the Bullitt Circuit Court in March of 2014, which affirmed the decision of the Hillview Civil Service Board in July of 2015. (DN 54, Exh. G.) Meanwhile, Barrow filed a separate Complaint in Bullitt Circuit Court against Defendants, which was subsequently removed to this court. (DN 1.) Cook filed an Intervening Complaint in October of 2014. (DN 14.) On January 29, 2015,

Cook entered into a voluntary settlement agreement with the City of Hillview, in which it was agreed to dismiss all pending disciplinary charges against him with prejudice. (DN 54, Exh. H.)

Defendants now move this court to enter summary judgment in their favor on all four counts of Barrow's Amended Complaint and Cook's Intervening Complaint.

## II. STANDARD

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, the Court must draw all factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

## III. DISCUSSION

Plaintiff Barrow and Intervening Plaintiff Cook bring the following claims: Count I under 42 U.S.C. §§ 1985 and 1986 against Defendants Caple and Straughn, individually, for conspiracy to deter Plaintiffs from testifying freely and to penalize Plaintiffs for doing so; Count II, for Tortious Employment Reprisal under Kentucky law against Defendant Hillview, for adverse employment action contrary to public policy; Count III, under 42 U.S.C. § 1983, against Defendant Hillview and individual Defendants, for reprisal for First Amendment speech; and Count IV, under Section 2 of the Kentucky Constitution, against individual Defendants for arbitrary governmental authority. (DN 6; DN 14.)

Defendants Caple, Straughn, and Hillview move for summary judgment on Plaintiff's Amended Complaint and Intervening Plaintiff's Intervening Complaint. The court will address each count in turn.

### a. *Immunity*

As an initial matter, the court will address the issue of qualified immunity as raised by Defendants. Qualified Immunity protects government officials who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This doctrine attempts to balance two important considerations – "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Determining if a party is insulated from suit under qualified immunity is a two-part inquiry: (1) whether the defendant violated a constitutional right; and (2) whether that right was clearly established. *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010). Whether a right was clearly established is a question of law. *Dickerson v. McClellan*, 101 F.3d 1151, 1156–57 (6th Cir. 1996). The court is not required to undertake this inquiry in sequential order and, instead, may "exercise [its] sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. When the issue of qualified immunity is raised, the plaintiff has the burden of showing that the defendants are not entitled to qualified immunity. *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (citing *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005)).

Defendants raised the issue of qualified immunity in their motion for summary judgment. For reasons stated below, this court finds that Plaintiffs have failed to show that the individual Defendants violated their constitutional or statutory rights; therefore, the issue of qualified immunity is moot.

### b. Count I: 42 U.S.C. §§ 1985(2) and 1986

Plaintiffs first bring claims under 42 U.S.C. §§ 1985(2)[2] and 1986. Count I of Barrow's Amended Complaint alleges that Defendants Caple and Straughn, in their individual capacities, intended to "deter the Plaintiff from testifying freely, fully, and truthfully in [*United States v. Caple*][3] and to punish him for doing so." (DN 6, ¶ 18.) Barrow further alleges that Caple and Straughn "conspired with each other and acted in concert with each other" in so deterring his testimony. (*Id*. at ¶ 17.) Intervening Plaintiff Cook brings the same allegation in his Intervening Complaint. (DN 14, ¶¶ 17-18.) The City of Hillview is not a party to this claim.

1. Section 1985(2) Claims

Section 1985(2) states that it is an unlawful conspiracy to interfere with civil rights, in relevant part:

> [i]f two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified…

42 U.S.C. § 1985(2). Therefore, "[t]o sustain a cause of action under 42 U.S.C. § 1985(2), a plaintiff must prove the existence of a conspiracy among 'two or more persons.'" *Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984). Additionally, a plaintiff

---
[2] Neither Plaintiff's Amended Complaint nor Intervening Plaintiff's Intervening Complaint specifies that the claims are brought under subsection 2 of 42 U.S.C. § 1985. However, Plaintiffs clarify in briefing that they only allege claims under 42 U.S.C. § 1985(2). (DN 55, 14.)
[3] When Plaintiff Barrow's Amended Complaint was filed, a criminal prosecution was still pending in the United States District Court for the Western District of Kentucky, No. 3:13-cr-00134-CRS-1. (DN 6, ¶ 15.)

must support a claim under Section 1985 with "specific allegations showing the existence of a conspiracy." *Azar v. Conley*, 456 F.2d 1382, 1384 (6th Cir. 1972).

Because the language of Section 1985(2) requires that the conspiracy is among "two or more persons," courts have found that a corporation cannot conspire with itself. This notion, called the "intra-corporate conspiracy doctrine," states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Johnson v. Hills & Dales General Hosp.*, 40 F.3d 837, 830-40 (6th Cir. 1994) (quoting *Hall v. Cuyahoga Valley Joint Vocational Sch. Bd. Of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991). While the intra-corporate conspiracy theory developed within the frame-work of antitrust law, courts have consistently applied the theory in Civil Rights cases. *Doherty*, 728 F.2d at 339. This doctrine is applicable to both government entities and corporations. *Brace v. Ohio State Univ.*, 866 F. Supp. 1069, 1075 (S.D. Ohio 1994). Therefore, under this doctrine, the City of Hillview may not be held liable for any claims under 42 U.S.C. § 1985(2).

Defendants concede that an exception to the intra-corporate conspiracy doctrine exists when employees or agents of the same entity act outside the scope of their employment. *Johnson*, 40 F.3d at 840. The fact that Plaintiffs' claims were brought against Caple and Straughn in their individual capacities is not sufficient to establish that Defendants were acting outside the scope of their employment. *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999) (citing *Harris v. Board of Educ.*, 798 F. Supp. 1331, 1346 (S.D. Ohio 1992) ("[S]imply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation. The plaintiff must also allege. . . that they acted other than in the normal course of their corporate duties.") (internal quotation marks and citation omitted)).

The Sixth Circuit case *Johnson v. Hills & Dales General Hosp.* is instructive in determining whether Plaintiffs have alleged facts sufficient to overcome the intra-corporate conspiracy doctrine.[4] 40 F.3d 837. This case distinguished between "collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Id*. at 841. In other words, "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Id*. (citing *Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990)). The Court noted that "internal corporate decisions" will "almost always be within the scope of employment." *Id*. at 840-41.

The Court in *Johnson* found that the defendants, employees of a hospital, were acting within the scope of their employment when they wrote a letter to their hospital's administration complaining about the performance of the plaintiff, a physician at the hospital. *Id*. at 838. As a result of the letter, the hospital president reassigned the physician to a different hospital department. *Id*. The plaintiff claimed she was reassigned because of racial discrimination, but the Court found that the actions of the defendants were protected by the intra-corporate conspiracy doctrine because, "the employees' complaints were made during the course of their working hours, the remarks were connected to the business of the hospital, and they were forwarded to proper managerial authorities." *Id*. at 841. *See also Irons v. City of Bolivar*, 897 F. Supp.2d 665, 669-70 (W.D. Tenn. 2012) ("Because the power to fire the police chief fell within the Mayor's authority and the power to review that decision was within the duty of the Personnel Board, the alleged conduct did not fall outside the scope of the Defendants' employment.")

---

[4] While the claim in *Johnson* was brought under Section 1985(3), which requires evidence of the intent to deprive a person or class of persons of the equal protection of the laws, the general application of the intra-corporate conspiracy doctrine and its exceptions applies to Section 1985(2) claims.

Applying the reasoning in *Johnson*, this court finds that the alleged retaliatory actions of Caple and Straughn in disciplining Barrow and Cook are "internal corporate decisions" such that Defendants were acting within the scope of their employment. The disciplinary charges against Plaintiffs were made during the course of their working hours, all the charges were connected to the Hillview police department and its policies, and the disciplinary charges were subject to review by the Hillview Civil Service Board. Further, it is not relevant whether plaintiffs actually committed the Hillview violations they were charged with; it is enough that the alleged retaliatory actions were connected to the "legitimate business" of the Hillview Police Department. *See Johnson*, 40 F.3d at 841 ("[I]t is not necessary that the complaints were based on fact.").

Construing all factual inferences in favor of Plaintiffs, the court nevertheless concludes that Barrow and Cook failed to allege sufficient facts to show that the Individual Defendants acted outside the scope of their employment in bringing disciplinary actions against them. Therefore, the intra-corporate conspiracy rule applies such that at least two separate people did not exist to form a conspiracy against Plaintiffs. Plaintiffs' Section 1985 claims fail as a matter of law and Defendants' motion for summary judgment will be granted with respect to Count I of the Plaintiffs' complaints.

2. Section 1986 Claims

42 U.S.C. § 1986 provides a cause of action against persons who fail to prevent a conspiracy under 42 U.S.C. § 1985. *See Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984). Therefore, in order to state a cause of action under Section 1986, Plaintiffs must first establish a cause of action under Section 1985. Because no conspiracy exists under Section 1985, Plaintiffs' Section 1986 claims must be dismissed as a matter of law.

### c. *Count II: Tortious Employment Reprisal*

Plaintiffs bring claims against the City of Hillview under Kentucky common law for alleged "tortious employment reprisal." Specifically, Plaintiffs claim that failing to report the conduct of Defendant Caple in January 2012 would have "constituted the crime of official misconduct under the Kentucky Penal Code." (DN 6, ¶ 23.) As such, Plaintiffs assert that adverse employment actions, allegedly taken by Defendants against Plaintiffs for compliance with the Kentucky Penal Code, contravene "fundamental and well-established" public policy under Kentucky law. For the following reasons, the court finds that, even construing the facts in the light most favorable to Plaintiffs, Count II of Barrow's Amended Complaint and Cook's Intervening Complaint should be dismissed as a matter of law.

Plaintiffs are correct that Kentucky recognizes a common law retaliation claim distinct from an action under the Kentucky Whistleblower Statute, Ky. Rev. Stat. (KRS) § 61.102.[5] This common law action is called "public policy wrongful discharge." While Plaintiffs call their cause of action "tortious employment reprisal," the case law they offer in support of their claim solely refers to "public policy wrongful discharge." Therefore, Count II will be construed as a public policy wrongful discharge claim.

An action under the theory of wrongful discharge "is a relatively recent development, having arisen out of carefully crafted exceptions" to the terminable-at-will doctrine. *Hill v. Kentucky Lottery Corp.*, 327 S.W.3d 412, 420 (Ky. 2010). The terminable-at-will doctrine is a

---

[5] KRS § 61.102 states, in relevant part,
> No employer shall subject to reprisal, or directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of…any law enforcement agency or its employees, or any other appropriate body or authority, any facts or information relative to an actual or suspected violation of any law…

Plaintiff Barrow brought a claim under KRS § 61.102 in his original complaint (DN 1.) Barrow voluntarily dismissed this claim upon filing his Amended Complaint. (DN 6.)

common law principle whereby "an employer may discharge his at-will employee for good cause, no cause, or for a cause that some might view as morally indefensible." *See Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1984).

There are only two identified situations in Kentucky in which "grounds for discharging an employee are so contrary to public policy as to be actionable absent explicit legislative statements prohibiting the discharge." *Grzyb v. Evans*, 700 S.W.2d 399, 402 (Ky. 1985). These situations are: "where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment" or, "when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Id*. (citing *Suchodolski v. Michigan Consolidated Gas Co.*, 316 N.W.2d 710, 711-12 (Mich. 1982)).

Plaintiffs argue that they were retaliated against under the first situation; that failing to report the actions of Defendant Caple would be a violation of KRS § 522.030, Official Misconduct in the Second Degree. KRS § 522.030 states in relevant part that "[a] public servant is guilty of official misconduct in the second degree when he knowingly. . . [r]efrains from performing a duty imposed upon him by law or clearly inherent in the nature of his office." KRS § 522.030(1)(b). Reporting Defendant Caple's conduct, Plaintiffs assert, was a duty of their office; failing to report Caple's conduct would have amounted to a violation.

The tort of public policy wrongful discharge is not applicable to Plaintiffs' cases. Firstly, this action relates to the wrongful *discharge* of an employee, not adverse employment action in general. *See Gritton v. Disponett*, 2007 WL 3407459 at *12 (E.D. Ky. 2007) ("Actual discharge or termination of employment is an essential element of a wrongful discharge claim under Kentucky law.").

There is no dispute that Plaintiff Barrow was not terminated from the Hillview police department. (DN 55, Exh. D, 70:2-12.) Barrow's testimony that he believed he would have been terminated if not for the filing of the present lawsuit is merely speculative. (*Id*.) Cook, likewise, was not terminated from his position. (*Id*. at Exh. N.) Cook entered into a voluntary settlement with the Hillview Civil Service Board before the hearing on his charges, resulting in a transfer from his position as a detective to patrol officer. (*Id*.) As neither Barrow nor Cook was terminated, Plaintiffs cannot establish a claim under common law wrongful discharge.

Even if, *arguendo*, this court was to apply the concept of public policy wrongful discharge to adverse employment action in general, the law is clear that this action evolved as a public policy exception to the "terminable-at-will" doctrine. *See, e.g., Hill*, 327 S.W.3d at 420 (finding "a narrow public policy exception should be adopted" for the terminable-at-will doctrine); *See also Grzyb,* 700 S.W.2d at 401 (noting "the limitations on any judicial exceptions to the employment-at-will doctrine") (internal citations omitted); *See also Firestone*, 666 S.W.2d at 732 (reaffirming the "terminable-at-will" doctrine in light of public policy wrongful discharge).

Conversely, a claim under common law wrongful discharge is inapplicable to Barrow and Cook because they are police officers in the civil service of the City of Hillview and are not "terminable-at-will." In Kentucky, an employee is at-will "unless the parties specifically manifest their intention to condition termination only according to express terms...." *Jones v. Perry County Fiscal Court*, 185 F.Supp.3d 947, 955 (E.D. Ky. 2016) (citing *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir.1997)). A government position, by itself, does not constitute a protected property interest such that an employee is only terminable for cause. *Bailey,* 106 F.3d at 141.

Section 37.07(a) of the City of Hillview, Kentucky City Ordinances ("City Ordinances") states that:

> No employee in the classified service of this city shall be dismissed, suspended, or reduced in grade or pay for any reason except inefficiency, misconduct, insubordination or violation of law involving moral turpitude, or violation of any rule adopted by the city legislative body or Civil Service Commission.

(DN 54, Exh. A, § 37.07(a).) Hillview adopted civil service for Hillview police officers during the time relevant to this action. (*Id.*, § 37.02.) As such, the Plaintiffs' employment may only be terminated for the conditions stated in Section 37.07(a), above, and they are therefore not terminable-at-will. Plaintiffs' employment is protected from termination under the provisions of the City Ordinances and they do not need the benefit of the carefully crafted public policy exception to the terminable-at-will doctrine.

Plaintiffs only provided authority for a claim of public policy wrongful discharge and they offered no support for a common law tortious employment reprisal claim distinct from wrongful discharge. Therefore, this court has construed the Plaintiffs' claims as common law wrongful discharge actions has concluded that this cause of action is inapplicable to the facts of Plaintiffs' cases. Because there is no dispute that Barrow and Cook were not discharged from employment, and because, as police officers in the civil service of the City of Hillview, they were not terminable-at-will, Defendants' motion for summary judgment as to Plaintiffs' claims under Count II will be granted. Consequently, Count II of the Amended Complaint and the Intervening Complaint will be dismissed.

### d. Count III: 42 U.S.C. § 1983

Plaintiff Barrow claims, in the alternative to Count II of his Amended Complaint, that reporting the actions of Defendant Caple at Mayor Eadens' house in January of 2012 to law enforcement agencies is protected First Amendment speech and that Defendants unlawfully

retaliated against him for so exercising this protected speech. (DN 6, ¶ 28.) Intervening Plaintiff Cook alleges in his Intervening Complaint that his cooperation with law enforcement in investigating the abovementioned actions of Defendant Caple is similarly protected by the First Amendment; likewise, he alleges that he was also retaliated against for exercising this protected speech. (DN 14, ¶ 28.) Plaintiffs bring these claims pursuant to 42 U.S.C. § 1983. Because Plaintiffs do not factually or legally substantiate a claim under Section 1983, Count III of the Amended Complaint and Intervening Complaint must be dismissed. The Court will address separately the claims against the individual Defendants and the claims against Defendant Hillview.

1. Section 1983 Claims Against Caple and Straughn

Section 1983 does not, in itself, create substantive rights, but rather provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 (1979). Generally, a plaintiff claiming a Section 1983 violation must prove that a government action occurred "under color of law," and that the government action is a deprivation of a constitutional right or federal statutory right. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Government officials sued in their individual capacities may be liable under Section 1983. *Hafer v. Melo*, 502 U.S. 21, 23 (1991). Plaintiffs bring Section 1983 claims against Caple and Straughn, individually, for violation of their First Amendment rights.

Plaintiffs, as public employees, are subject to diminished First Amendment rights in certain circumstances. Public employees, however, are not stripped of all First Amendment rights by virtue of employment; courts are clear that a distinction exists between "speech offered by a public employee acting *as an employee* carrying out his or her ordinary job duties and that spoken by an employee acting *as a citizen* expressing his or her personal views on disputed

matters of public import." *Garcetti v. Ceballos*, 547 U.S. 401, 416 (2006) (emphasis in original). In order to establish a First Amendment claim under Section 1983, public employees must show that: (1) their First Amendment activity dealt with an issue of public concern and (2) that their interests in speaking outweighed the defendant's interests in regulating their speech. *See Connick v. Myers*, 461 U.S. 138, 147 (1983).

This first inquiry, whether the public employee's speech is a matter of public concern, is a question of law to be decided by the court. *Johnson v. University of Cincinnati*, 215 F.3d 561, 583 (6th Cir. 2000). "Whether an employee's speech is a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. The Supreme Court in *Garcetti* held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." 547 U.S. at 421.

Defendants argue that "It was [Plaintiffs'] sworn duties as police officers to report any such suspected illegal activities to appropriate law enforcement authorities, which they did… It cannot be reasonably disputed that Barrow and Cook's reports to law enforcement authorities were made pursuant to their official employment duties." (DN 54, 21.) Plaintiffs do not dispute this argument. In fact, Plaintiffs admit that they believe their cooperation with the FBI was pursuant to their official employment duties: "as we now believe is clear, [Plaintiffs'] speech was action constituting performance of their law enforcement duties." (DN 55, 31.) Rather, Barrow and Cook clarify that they bring Count III only as an alternative to Count II in case the court "may not agree that cooperating with the FBI and testifying in the Caple suit was part of Plaintiffs' law enforcement duties." (*Id.*)

While the court acknowledges that a claim may be brought in the alternative,[6] Cook and Barrow must nevertheless meet the summary judgment standard for the alternative claim in order for that claim to survive a properly supported motion. The Federal Rules of Civil Procedure (FRCP) Rule 56(e) provides that, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Liberty Lobby*, 477 U.S. at 250. Plaintiffs have failed to set forth *any* facts tending to support their alternative argument that Cook and Barrow were acting outside the scope of their employment duties when they participated in the FBI investigation.

Under Count II, Plaintiffs support their contention that Barrow and Cook were acting within the scope of their employment. As previously addressed at length in this Memorandum Opinion,[7] Plaintiffs argue that, "Enforcement of criminal law… is a duty inherent in the nature of a law-enforcement official." Plaintiffs provide the language of KRS § 522.030, Official Misconduct in the Second Degree, in support. (DN 55, 34.) Conversely, in their argument for Count III, Plaintiffs do not offer a single fact tending to show that, in the alternative, Barrow and Cook were engaging in protected First Amendment activity. Plaintiffs similarly do not offer any law or precedent supporting an argument that reporting misconduct or participating in an FBI investigation is protected speech. Barrow and Cook merely "ask the court not to dismiss [Count III] at this point, but to wait until the scope of Plaintiffs' duties issue is resolved." (*Id*. at 31.) This "wait and see" approach is irreconcilable with their burden on a properly supported motion for summary judgment. Plaintiffs have neither moved for summary judgment nor met the

---

[6] Federal Rules of Civil Procedure Rule 8(d) states that, "A party may state as many separate claims or defenses it has, regardless of consistency."
[7] *See* Section C, "Count II: Tortious Employment Reprisal" of the "Discussion" of this Memorandum Opinion.

summary judgment requirements for an adverse party under FRCP Rule 56(e); consequently, Plaintiffs' Section 1983 claims against Caple and Straughn will be dismissed.[8]

2. Section 1983 Claims Against Hillview

Next, the court turns to Defendants' argument that Plaintiffs' claims against the City of Hillview must fail to the extent that Plaintiffs attempt to assert a claim under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978). *Monell* allows local governing bodies to "be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. Similarly, local governments may be liable for implementing or adopting unconstitutional customs. *Id.*

While not specifically referencing *Monell*, Plaintiff's Amended Complaint states that, "The retaliatory reprisals against the Plaintiff were carried out by the Defendant Hillview through the actions of Caple and Straughn… and constitute the result of Hillview policy as imposed by said individuals." (DN 6, ¶ 29.) Cook's Intervening Complaint states the same. (DN 14, ¶ 29.) Beyond this allegation, there is nothing in the record to indicate that Caple and Straughn were implementing or executing any unconstitutional policy, ordinance, regulation, decision, or custom of Hillview or its Ordinances. The court thus finds that Plaintiffs have not established a *Monell* claim.

---

[8] Additionally, Plaintiffs fail to meet their burden in overcoming Defendants' qualified immunity defense. Defendants raised the issue of qualified immunity for Count III: "[Defendants] are entitled to qualified immunity where applicable, and Plaintiff's [sic] claims for violations of 42 U.S.C. Section 1983 must fail." (DN 54, 11.) When a defendant raises this issue, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *See Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012). Plaintiffs fail to address qualified immunity under their Section 1983 claims.

For the reasons stated, summary judgment will be granted to Defendants on Plaintiffs' Section 1983 claims. Count III of Barrow's Amended Complaint and Cook's Intervening Complaint will be dismissed.

### e. Count IV: Kentucky Constitution § 2

Plaintiffs lastly claim that the actions of Defendants constituted arbitrary governmental authority under Section 2 of the Kentucky Constitution. Count IV of Plaintiff Barrow's Amended Complaint states, "The actions of Defendants as set out above constitute the exercise of arbitrary governmental authority prohibited by Section 2 of the Kentucky Constitution." (DN 6, ¶ 33.) Barrow's Amended Complaint further states that "The Defendants are therefore liable to the Plaintiff for damages caused by such actions." (*Id*. at ¶ 34.) Cook's Intervening Complaint alleges the same. (DN 14, ¶ 33-34.)

The language of Section 2 of the Kentucky Constitution is brief, simply stating, in full: "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." Ky. Const. § 2. In essence, "Section 2 is a curb on the legislature as well as on any other public body or public officer in the assertion or attempted exercise of political power." *Kentucky Milk Marketing and Antimonopoly Com'n v. Kroger Co*., 691 S.W.2d 893, 899 (Ky. 1985). Under Kentucky law, judicial power may be used to intervene upon governmental action "[i]f the action taken rests upon reasons so unsubstantial or the consequences are so unjust as to work a hardship." *Id*. (citing *Wells v. Board of Education of Mercer County, Ky.*, 289 S.W.2d 492, 494 (Ky. 1956)).

In a 2011 decision, the Kentucky Supreme Court specifically declined to create a private right of action in Kentucky for money damages for violations of the state constitution. *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529 (Ky. 2011). The Court noted that Kentucky's General

Assembly has not authorized a statutory private right of action for state constitutional violations and the Court rejected the request to create a constitutional tort akin to a federal *Bivens* action. *Id*. at 536-37 (discussing *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)). Because Plaintiffs seek "damages caused by such actions" of individual Defendants for violations of Section 2 of the Kentucky Constitution, Count IV of Barrow's Amended Complaint and Cook's Intervening Complaint are not cognizable and will be dismissed.

## IV. CONCLUSION

For the reasons stated, the court will **GRANT** the motion of Defendants Hillview, Straughn, and Caple for summary judgment. The Court will **DISMISS** Plaintiff Barrow's Amended Complaint and **DISMISS** Intervening Plaintiff Cook's Intervening Complaint.

An order will be entered in accordance with this opinion.

December 14, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**